IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROBERT DAVIS,<br>JUANDELLA CRUZ,<br>FRANKLIN FERGUSON,<br>WAYNE BOSTIC,<br>JOHNNY RAY PARR,<br>KENNETH BERNARD CULP,<br>JOHNNY L. PHILLIPS,<br>SAMUEL ANDREW LEMAR, and<br>MARCUS FLOYD,<br>acting on their behalf and<br>on behalf of others similarly<br>situated,<br><br>    Plaintiffs,<br><br>v.<br><br>TED SUTTON, in his personal<br>capacity and in his official<br>capacity as Sheriff of<br>Lauderdale County, and<br>H. GWINN MATTHEWS, in his<br>personal capacity and in his<br>official capacity as County<br>Executive for Lauderdale County,<br>and THE LAUDERDALE COUNTY<br>BOARD OF COMMISSIONERS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 93-2004 Ml<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER GRANTING PLAINTIFFS' MOTION FOR COMPENSATORY DAMAGES**

Before the Court is Plaintiffs' Motion to Cite Defendants for Contempt of Court, filed July 28, 2004. The Court held hearings on the motion on September 7, 2004, and on September 22-23, 2004. On March 31, 2005, the Court granted Plaintiffs'

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 12-14-05



motion and found Defendants to be in contempt of court regarding certain provisions of the 1998 Consent Order. (Order Granting Plaintiffs' Motion to Cite Defendants for Contempt of Court, March 31, 2005 (Docket No. 194).) Each party subsequently filed memoranda on what sanctions should be awarded for contempt. The Court held a purgation and damages/compensation hearing on May 20, 2005. The only remaining matter before the Court is the amount of compensatory damages to award the three inmates injured by Defendants' contempt.

I.  **Background**

Plaintiffs brought this suit under 42 U.S.C. § 1983, alleging infringement of their constitutional rights due to various deficiencies in the Lauderdale County Jail facility ("Jail"). On May 28, 1993, Plaintiffs' lawsuit was certified as a class action for injunctive relief in accordance with Federal Rules of Civil Procedure 23(a) and 23(b)(2). On September 7, 1993, the Court granted Plaintiffs' motion for partial summary judgment, finding that Defendants violated the Plaintiffs' rights under the Eighth and Fourteenth Amendments of the United States Constitution. (Order on Pls.' Mot. Partial Summ. J., Sept. 7, 1993, (Docket No. 85).) On September 23, 1993, the Court, pursuant to a Joint Motion Seeking Approval of Settlement, filed an order granting injunctive relief and a consent order granting

2

additional relief.[1]  (Order Granting Injunctive Relief, Sept. 23, 1993, (Docket No. 89); Consent Order Granting Additional Injunctive Relief, Sept. 23, 1993, (Docket No. 90).)

On April 1, 1998, this Court entered its Consent Final Order Dismissing Case, and Granting Permanent Injunctive Relief. (Consent Final Order Dismissing Case, and Granting Permanent Injunctive Relief, Apr. 1, 1998, (Docket No. 173)("Consent Order").)  In that order, the parties agreed that certain provisions of injunctive relief granted in the September 23, 1993, orders be made a permanent injunction that survived dismissal of the case.  Among the provisions that remained in full force and effect as a permanent injunction was the following requirement regarding the use of chemical agents:

> (8) <u>Use of Freeze, mace and other chemical agents.</u> Defendants may only use "Freeze," mace, or other chemical agents when absolutely necessary to prevent harm by an inmate to another person or to prevent substantial property damage.  Freeze, mace and other chemical agents may never be used as a form of inmate discipline.  The Defendant Sheriff shall insure that all jail personnel are properly trained in the proper use of Freeze, mace and other

---

[1] The orders, filed on September 23, 1993, required the Defendants to: (1) construct a new jail facility within two years; (2) install a Scott Air Pack at the Jail and provide training on its use; (3) maintain sufficient staff to perform inspections hourly, or every fifteen minutes if inmates are intoxicated; (4) maintain a logbook to record those inspections; (5) refrain from permitting work by inmates without their consent for private individuals, unless the inmates are remunerated at not less than minimum wage; (6) provide sufficient linens and blankets for inmates; and (7) restrict the use of chemical agents on inmates, unless their use is absolutely necessary to prevent harm by an inmate to another person or substantial property damage.

>     chemical agents, which is consistent with this order.

(<u>Id.</u> at 2, 4.)

Plaintiffs filed a Motion to Cite Defendants for Contempt of Court on July 28, 2004, contending that Defendants were in violation of the above provision. The Court held a hearing on this motion on September 7, 2004, and on September 22-23, 2004. During the hearing, the Court received evidence on Plaintiffs' motion. On March 31, 2005, the Court granted Plaintiffs' motion to cite defendants for contempt of court.

## II.   March 31, 2005, Contempt Order

In its March 31, 2005, Order Granting Plaintiffs' Motion to Cite Defendants for Contempt of Court ("Contempt Order"), the Court made several findings of fact with regard to three inmates at the Jail during the summer of 2004—Ernie McCage, Leman Russell, and Latonia Eisom.[2] The Court found that these inmates were sprayed with chemical agents while they were alone in single cells and that they were subsequently left in their cells—sometimes tied with their arms and legs behind them—for hours, without any treatment. The Court further found that these inmates were sprayed either for no apparent penological reason or as discipline and punishment for conduct that included screaming and kicking the cell door, throwing a styrofoam food tray out of

---

[2] McCage and Russell are mentally ill.

4

their cells, and flooding the cell.

After setting out these factual findings, the Court found, by clear and convincing evidence, that Defendants had not complied with the permanent injunction, which requires that chemical agents only be used "when absolutely necessary to prevent harm by an inmate to another person or to prevent substantial property damage." (Consent Order at 4.) The Court also found that:

> the record demonstrates by clear and convincing evidence that chemical agents have been used as a form of inmate discipline. In addition, the circumstances under which the above inmates were sprayed demonstrated by clear and convincing evidence that Defendants have not complied with the provision of the injunction requiring that "Defendant Sheriff shall insure that all jail personnel are properly trained in the proper use of Freeze, mace and other chemical agents, which is consistent with this order." (Consent Final Order Dismissing Case, and Granting Permanent Injunctive Relief, Apr. 1, 1998, (Docket No. 173), at 4.)

(Contempt Order at 30-31.)

### III. Compensatory Damages

As the Court has previously determined, McCage, Russell, and Eisom were sprayed with chemical agents commonly known as "Freeze," "Deep Freeze" and "Clear Out." (Contempt Order at 6.) As set forth in the Contempt Order, a person who is sprayed with large amounts of Freeze, Deep Freeze, or Clear Out experiences extreme pain. Freeze "burns the skin upon contact and causes a person's eyes to water and involuntarily close[,] causes the skin

5

to feel as though it is on fire, affects a person's breathing and causes a shortness of breath. (Id. at 7.) Clear Out "prevents a person in an exposed area from breathing until that person is removed from the area." (Id. at 6.) An individual who is sprayed with large quantities of Freeze, Deep Freeze, or Clear out would be in extreme pain, and if they could not remove the agent, "the person would feel as though they were on fire, especially in their facial area, and would throw up mucous and saliva." (Id. at 7-8.)

The Court has previously determined that inmate Ernie McCage was sprayed with a chemical agent by a correctional officer on at least four or five occasions, and once while he was "hogtied" with his hands tied behind his back, his legs cuffed, and his hands shackled to his legs. (Id. 11, 12.) Inmate Leman Russell was sprayed with a chemical agent by a correctional officer four or five times. (Id. 15.) Inmate Latonia Eisom was sprayed with a chemical agent and subsequently hogtied for an entire night by a correctional officer on one occasion. (Id. at 21-22.)

In light of the Court's findings in the March 31, 2005, Contempt Order, Plaintiffs request that inmates McCage, Eisom, and Russell be compensated for their pain and suffering at a rate of $200,000 "per occurrence." Defendants do not object to an award of damages, but argue that the amount of Plaintiffs' request is "greatly excessive." Defendants acknowledge that

6

"these individuals have suffered some discomfort" but note that "they sustained no permanent injuries."

In support of their request, Plaintiffs cite <u>Champion v. Outlook Nashville Inc.</u>, 380 F.3d 893 (6th Cir. 2004). In <u>Champion</u>, the Sixth Circuit upheld a jury award of $900,000—$300,000 per offending officer—for the physical and mental pain and suffering of an arrestee who was sprayed with pepper spray, incapacitated with physical restraints, and subjected to asphyxiating pressure. Champion died of his injuries shortly thereafter, and his father and sister brought an action against the officers under 42 U.S.C. § 1983. The arresting officers appealed the verdict as excessive, but the Court held that the amount was not so excessive so as to shock the conscience and denied the defendants' request for a remittitur. 380 F.3d at 905 ("Because the Officers ask us to undertake a Sissiphyean task of comparing Champion's pain and suffering to other forms of pain and suffering and because the award does not shock the conscience, we hold that the district court did not abuse its discretion in denying the Officers's motion [for a new trial or remittitur].")

Plaintiffs contend that, in light of <u>Champion</u>, an award of $200,000 per violation is reasonable. They note that Champion was subjected to pepper spray and restraint for only seventeen minutes, while McCage, Russell and Eisom were subjected to the

7

effects of pepper spray for hours and that McCage and Eisom had to endure the effects of the spray while hogtied. Defendants contend that <u>Champion</u> is distinguishable because in this case, the "discomfort was temporary and none of the three individuals sustained any permanent injuries."

The Court agrees with Defendants that the impermanent nature of the inmates' injuries bears directly on the issue of appropriate amount of damages to award. Moreover, the Court does not find <u>Champion</u> applicable. In <u>Champion</u>, damages were awarded by a jury to compensate the family of an individual who <u>died</u> as a result of the defendants' excessive force. Cases in which the court has awarded damages for an inmate's severe, yet temporary, pain and suffering incurred as a result of a guard's unlawful behavior are more instructive. <u>See, e.g.</u>, <u>Jackson v. Austin</u>, 241 F. Supp. 2d 1313, 1319, 1323 (D. Kan. 2003)(awarding $15,000 in § 1983 action to prisoner who was grabbed by three officers, pushed to the floor, handcuffed, and dragged 50 yards on the floor, causing a contusion, swelling of his knee, shoulder and wrists and "severe and excruciating pain"); <u>Williams v. Omodt,</u> 640 F. Supp. 120, 122-23 (D. Minn. 1986)(awarding $5,000 in § 1983 action to inmate who suffered "bruises, contusions, swelling, and considerable pain, but no permanent physical injury" as a result of unlawful beating by guard); <u>see also</u> <u>Wheatley v. Ford</u>, 679 F.2d 1037, 1040 (2d Cir. 1982)(remitting damages from $55,000 to

8

$25,000 on basis that plaintiff's injuries in police brutality case were severe but temporary).

In consideration of the severe, yet temporary, pain and suffering of inmates McCage, Russell, and Eisom, the particular circumstances of each inmate's ordeal, as well as the other factual findings set forth in the Contempt Order, the Court hereby awards the following amounts as compensation for the inmates' pain and suffering: Ernie McCage is awarded $40,000 in compensatory damages; Leman Russell is awarded $30,000 in compensatory damages; and Latonia Eisom is awarded $25,000 in compensatory damages.

So ORDERED this _13_ day of December, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 230 in case 2:93-CV-02004 was distributed by fax, mail, or direct printing on December 14, 2005 to the parties listed.

---

J. Thomas Caldwell
CALDWELL & FITZHUGH
114 Jefferson Street
Ripley, TN 38063

Robert L. Hutton
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Financial Unit
FINANCIAL UNIT
167 N. Main St.
Room 242
Memphis, TN 38103

Clifford D. Pierce
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

Michael W. Whitaker
WHITAKER LAW FIRM
7054 Highway 64
Oakland, TN 38060

Honorable Jon McCalla
US DISTRICT COURT